# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

**No. 26-1893**

**VENEZUELAN ASSOCIATION OF MASSACHUSETTS, et al.,**

**Plaintiffs - Appellants,**

**v.**

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al.,**

**Defendants - Appellees.**

---

**OPPOSITION TO EMERGENCY MOTION FOR 5 U.S.C § 705 STAY PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY**

---

## INTRODUCTION

On July 4, 2025, the One Big Beautiful Bill Act ("H.R. 1") was signed into law. Among other things, H.R. 1 modified the existing frameworks for asylum applications and employment authorization documents ("EADs") for individuals with Temporary Protected Status ("TPS"). This litigation concerns the implementation of these modifications by the Department of Homeland Security ("DHS") and the U.S. Citizenship and Immigration Services ("USCIS") via three policies: 1) a one-year cap on the issuance and renewal of TPS-based work authorizations (the "Cap Policy"); 2) a March 2026 update to the USCIS website explaining that the Cap Policy will apply to previously-issued EAD extensions (the "March 2026 update"); and 3) an Interim Final Rule published on April 29, 2026 pertaining to the Cap Policy and the implementation of procedures to fully operationalize the statutory annual asylum fee ("AAF") requirement.

Plaintiffs sought to postpone implementation of these policies under 5 U.S.C. § 705. The district court allowed Plaintiffs' motion in part, postponing the implementation of consequences for failure to pay the AAF,[1] but otherwise denied the motion. Plaintiffs have appealed the district court's order (the "Order") to the extent their motion was denied, and now seek an emergency stay pending appeal and

[1] Because Plaintiffs do not appeal this portion of the Order, the government does not discuss the AAF in this Opposition.

immediate administrative stay. This Court has already denied Plaintiffs' motion for an immediate administrative stay. The remaining relief requested in Plaintiffs' motion should likewise be denied.

## BACKGROUND

H.R. 1 established that DHS "shall require the payment of a fee…by any alien at the time such alien seeks a renewal or extension of employment authorization based on a grant of [TPS]." 8 U.S.C. § 1811(a). H.R. 1 further mandated that "[a]ny employment authorization for an alien granted [TPS], or any renewal or extension of such employment authorization, shall be valid for a period of 1 year or for the duration of the designation of [TPS], whichever is shorter." *Id.*

On July 22, 2025, USCIS published a Notice in the Federal Register providing the information necessary for the public to comply with H.R. 1, including the fees required by 8 U.S.C. § 1811(a).[2] 90 Fed. Reg. 34,511 (July 22, 2025). The Notice quoted H.R. 1 verbatim, including the language that any TPS-based employment authorization—including both the initial authorization and any renewal thereof—"shall be valid for a period of 1 year or for the duration of the designation of [TPS], whichever is shorter." 90 Fed. Reg. 34,514.

[2] The fee for fiscal year 2025 is $275. *See* 90 Fed. Reg. 34,514.

In an update to its website in March 2026, USCIS explained that the one-year period for TPS-based work authorizations mandated by H.R. 1 will apply to previously issued EAD extensions. Pl. Motion at 14. That said, the update clarified that the application of H.R.1 to these previously issued EAD extensions was forward looking in that it only begins as of the effective date of the Notice in the Federal Register—July 22, 2025.[3] In other words, any previously issued EAD extension would expire by July 22, 2026—one year from the effective date of H.R. 1.

## ARGUMENT

A stay pending appeal is warranted when (1) "the stay applicant has made a strong showing that he is likely to succeed on the merits," (2) "the applicant will be irreparably injured absent a stay," and (3) the public interest and balance of the equities support a stay. *Nken v. Holder*, 556 U.S. 418, 426 (2009). Plaintiffs have not met their burden.

### I. Plaintiffs are not likely to succeed on the merits

"Under the APA, a reviewing court may set aside an agency's decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Atieh v. Riordan*, 797 F.3d 135, 138 (1st Cir. 2015) (citing 5 U.S.C. § 706(2)). Plaintiffs claim the Cap Policy is procedurally invalid, impermissibly retroactive,

[3] *See* https://www.uscis.gov/i-9-central/form-i-9-related-news/policy-related-news-archive/update-to-tps-page-on-ead-automatic-extensions.

and in conflict with existing TPS legislation, 8 U.S.C. § 1254a(a)(2). Plaintiffs' claims fail.

First, Plaintiffs claim the Cap Policy was required to undergo notice and comment. It was not. An agency need not go through notice and comment where, for good cause, it finds such procedure would be impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(B). Also, notice and comment is not required for rules of agency organization, procedure, or practice. 5 U.S.C. § 553(b)(A).

Here, notice and comment was unnecessary because the Cap Policy simply restates the statute it was required to implement. *See Gray Panthers Advocacy Comm. v. Sullivan*, 936 F.2d 1284, 1291 (D.C. Cir. 1991); *World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 65 (D.D.C. 2000). As noted by the district court, the language implementing the Cap Policy in both the July 2025 Notice in the Federal Register and the April 2026 Interim Final Rule is "virtually identical" to the language found in H.R. 1.[4] Order at 8. Accordingly, because USCIS was statutorily required to implement the Cap Policy, notice and comment was unnecessary and Plaintiffs cannot demonstrate a likelihood of success on this claim.

[4] Any renewal or extension of EAD "shall be valid for a period of 1 year or for the duration of the designation of temporary protected status, whichever is shorter." 8 U.S.C. § 1811(a).

Next, Plaintiffs claim the Cap Policy is impermissibly retroactive to the extent it limits the duration of employment authorizations for TPS holders who applied for authorizations before H.R. 1. To start, the Cap Policy is not retroactive for two reasons. First, USCIS interprets H.R. 1 to cap the validity of any TPS-related employment authorization at one year commencing in fiscal year 2025. 8 U.S.C. § 1811(a). This reading is consistent with H.R. 1's structure of initial and renewed fees tied to time-limited employment authorization periods. *See* U.S.C. §§ 1803(c) (governs renewal and extension fees) and 1811(a) (governs TPS EAD initial applications); 8 C.F.R. § 274a.12(a)(12), (c)(19); 8 C.F.R. § 244.5(d). Second, the Cap Policy is forward-looking in that it applies only from the effective date of H.R. 1. As explained in the March 2026 update to the USCIS website, any period of employment authorization that may have accrued prior to July 22, 2025, would not be retroactively taken away. And as noted by the district court, "[b]y mandating that no previously issued extension may last longer than one year from the date of the July 2025 FRN, USCIS has simply confirmed the intent of the statute." Order at 9.

However, even if the Cap Policy was retroactive, it was not *impermissibly* retroactive because it did not significantly impair any existing substantive rights of TPS holders. *See Arevalo v. Ashcroft*, 344 F.3d 1, 10 (1st Cir. 2003) ("[A] statute's temporal reach becomes unacceptable only when its retrospective application would significantly impair existing substantive rights and thereby disappoint legitimate

expectations"). Here, applicants for an EAD—even those who received automatic 540-day extensions prior to H.R. 1 or simply *thought* they were going to receive an automatic 540-day extension—have no legitimate expectation in the duration of any singular employment authorization. DHS regulations previously allowed for an automatic extension period "up to" 540 days, which could be cut short for a variety of reasons. 8 C.F.R. § 274a.13(d)(3). Moreover, as correctly noted by the district court, "the Cap Policy does not revoke a substantive right to discretionary relief outright. Rather, it limits the maximum duration for which an individual may enjoy that right." Order at 8. Accordingly, even if retroactive, any retroactive application of the Cap Policy is permissible, and Plaintiffs cannot demonstrate a likelihood of success on this claim. *See Arevalo*, 344 F.3d at 11 ("A new law is not impermissibly retroactive simply because subsequent proceedings under that law's authority implicate past events.").

Finally, Plaintiffs claim the Cap Policy conflicts with the pre-existing TPS statute, 8 U.S.C. § 1254a(a)(2). USCIS expressly contemplated the potential tension between the newly enacted 8 U.S.C. § 1811(a)—which places a one-year duration-of-designation cap on TPS-related employment authorization—and the pre-existing 8 U.S.C. § 1254a(a)(2), which states that TPS-based employment authorization is "effective throughout" the period of TPS. 91 Fed. Reg. 22,961. Applying the ordinary tools of statutory construction, USCIS gave effect to both statutes by

assigning them complementary roles.[5] *Id.* USCIS reasoned that Section 1254a(a)(2) continues to define who is *eligible* to be employment authorized—TPS beneficiaries under 8 C.F.R. § 274a.12(a)(12) and prima facie-eligible beneficiaries receiving temporary treatment under 8 C.F.R. § 274a.12(c)(19) and 8 C.F.R. § 244.5—while Section 1811 defines the maximum *duration* for each period of authorization across both categories. 91 Fed. Reg. 22,961. Put another way, USCIS explained that while Section 1254a(a)(2) states that employment authorization is "effective throughout" TPS, that statute provides for a "status-based entitlement to be *eligible* for authorization during the life of the TPS designation, not as a guarantee that any single authorization period may exceed H.R. 1's specific limit." 91 Fed. Reg. 22,961. Applying the later-in-time canon resolves the textual tension by allowing Section 1254a entitlement to persist, while H.R. 1's later, more specific command regulates how long each authorization may run.[6] 91 Fed. Reg. 22,961.

[5] *See Corley v. United States*, 556 U.S. 303, 314 (2009) (recognizing that "a statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant") (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).

[6] *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("It is commonplace of statutory construction that the specific governs the general" particularly where Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions.").

That said, USCIS recognized that, where a TPS designation is longer than 1 year, a possible impact of H.R. 1's renewal requirement is that some aliens with TPS status could face gaps in employment authorization until they receive a renewal of employment authorization. 91 Fed. Reg. 22,961. However, as recognized by the district court, "[t]he possibility that implementation of H.R. 1 will create a gap in employment authorization is insufficient to find that the policy itself is unlawful." Order at 10. And, in any event, USCIS has extended the TPS-based EADs for El Salvador to September 9, 2026.[7] Accordingly, Plaintiffs are unlikely to succeed on their claim that the Cap Policy is unlawful.

## II. The non-merits considerations governing stay motions also favor denial of a stay.

Plaintiffs have also failed to show that their members are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). While Plaintiffs claim their members will lose their employment authorizations that extend beyond one year, any harm flowing from the loss of employment authorization under these circumstances results from the statutory scheme that Congress designed. By its plain terms, H.R. 1 limits employment authorization periods to one year. *See* 8 U.S.C. § 1811(a). The statute does not

[7] https://www.uscis.gov/humanitarian/temporary-protected-status/temporary-protected-status-designated-country-el-salvador

allow for employment authorization periods beyond one year. Because the purported loss of benefits flows from the statute itself, Plaintiffs cannot show that their alleged harms "directly result from the action which [they] seek[] to enjoin." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

In any event, the loss of employment authorization beyond one year "cannot constitute the requisite irreparable injury" to justify a stay under these circumstances. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs claim that they face immediate and irreparable harm absent a stay. But Plaintiffs were aware of DHS's implementation measures as early as July 22, 2025—exactly one *year* ago. Plaintiffs' delay in seeking a stay vitiates their allegations of irreparable harm. *See Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977); *see also Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995) ("where plaintiff seeking immediate, emergency relief delays in bringing suit, such delay may preclude emergency relief because failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury"). Moreover, Plaintiffs' claim that they face immediate and irreparable harm is speculative and belied by the fact that USCIS has extended TPS-based EADs for El Salvador, as described above.

Plaintiffs have also failed to show that the remaining equitable factors weigh in their favor. The government suffers irreparable injury "[a]ny time" it is "enjoined

by a court from effectuating statutes enacted by representatives of [the] people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). The relief Plaintiffs seek would frustrate USCIS's efforts to implement the express language of Congress in enacting H.R. 1. *See INS v. Legalization Assistance Project*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers) (warning against "intrusion by a federal court into the workings of a coordinate branch of Government"). For these reasons, the non-merits considerations favor denial of a stay.

**III. Any relief must be limited to Plaintiffs.**

Finally, even if a stay were appropriate, which it is not, any relief should be limited to Plaintiffs. Under settled constitutional and equitable principles, the Court may not issue relief broader than necessary to remedy actual harm shown by specific plaintiffs. *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Limits on courts' equitable authority apply just as squarely to APA relief under § 705 as to preliminary injunctions. Nothing in § 705 rebuts the presumption that traditional equitable rules apply, and so § 705 does not authorize universal relief. *See Hecht v. Bowles*, 321 U.S. 321, 330 (1944). Section 705's text embraces principles of equity, authorizing "all necessary and appropriate process" and making clear that "irreparable harm," a traditional equitable inquiry, is a key consideration. 5 U.S.C. § 705. In sum, § 705 does not depart from the "party-specific principles" that "permeate our

understanding of equity," and the Court should therefore limit any relief to the Plaintiffs here. *CASA*, 606 U.S. at 844.

## CONCLUSION

The Court should deny Plaintiffs' Emergency Motion for 5 U.S.C. § 705 Stay and Immediate Administrative Stay.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

*<u>/s/ Nicole M. O'Connor</u>*
NICOLE M. O'CONNOR
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3112
Nicole.O'Connor@usdoj.gov

Date: August 12, 2026

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify that this document has been prepared using a proportionally spaced typeface in Microsoft Word and contains fewer than 5,200 words. Fed. R. Civ. P. 27(d)(1)(E) and Fed. R. Civ. P. 27(d)(2)(A).

Dated: August 12, 2026

*<u>/s/ Nicole M. O'Connor</u>*
Nicole M. O'Connor
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: August 12, 2026

*/s/ Nicole M. O'Connor*
Nicole M. O'Connor
Assistant U.S. Attorney